IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LONNIE L. JACKSON,

               Plaintiff,

      v.

RICK RAEMISCH, STEVEN CASPERSON,
JUDY P. SMITH, TIM PIERCE, JENNIFER
DELAUEX, J. SMITH, J. TABAR, J. HIBBARD,
Correctional Officer MEITZ, Correctional
Officer EHNANT, K. SCHELFHOUT, RANDY J.
SPRANGERS, Correctional Officer KELLER,
Lt. H. KUSTER, THOMAS EDWARDS,
RN WENDY C., Dr. MURPHY, Lt. TONY,
Lt. DOMAN, JOHN DOE CORRECTIONAL
STAFF, JAMES GREER, Dr. DAVID BENNETT,
Dr. SUMNICHT and BELINDA SCRUBBE,
DOUG DEMOTTS,

               Defendants.[2]

OPINION and ORDER

10-cv-212-slc[1]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

     In an order entered June 11, 2010, I told plaintiff Lonnie L. Jackson that his

_____

    [1] For the purpose of issuing this order, I am assuming jurisdiction over the case.

    [2] Plaintiff's original complaint does not name Doug Demotts as a defendant although plaintiff refers to him as such in the body of the complaint.  Plaintiff has filed a document stating that he intended to name Demotts.  For the reasons explained in the opinion, I will accept the request and have amended the caption accordingly.

1

complaint violated Fed. R. Civ. P. 20 because it included unrelated claims against different defendants. As I explained, his complaint included six different lawsuits, broken up as follows:

1.      Lawsuit #1 involves a claim that defendant K. Schelfhout "harassed" plaintiff about his medical conditions.

2.      Lawsuit #2 involves claims that

    a.      defendants Randy J. Spranger, J. Smith, J. Jaber, Correctional Officer Meitzen, J. Hibbard and H. Kuster used excessive force against plaintiff when placing him in temporary lockup;

    b.      in connection with taking plaintiff to temporary lockup, defendant Spranger also deprived plaintiff of his property without due process of the law;

    c.      defendant Tim Pierce never responded to plaintiff's complaints about the alleged excessive force;

    d.      defendant Correctional Officer Ehnant performed an illegal strip search on plaintiff and defendant Kuster allowed the search to be performed (plaintiff also mentions a "defendant" Doug Demotts, but no such defendant is named in the caption);

    e.      Defendant RN Wendy C. failed to provide plaintiff with adequate medical care for his injured wrist and leg after the excessive force incident;

    f.      defendant Spranger violated plaintiff's equal protection rights by treating him more severely during the excessive force incident because of his race and sexual orientation; and

    g.      defendant Spranger used the force he did against plaintiff in retaliation for plaintiff's speaking to an officer about the prison's rules.

2

3.      Lawsuit #3 involves claims that

 a. defendants Doman and unnamed prison staff violated plaintiff's due process rights by failing to give him a fair hearing in connection with charges he received related to the excessive force incident;

 b. defendant Judy P. Smith upheld the allegedly unfair hearing; and

 c. defendant Doman violated plaintiff's due process rights by placing plaintiff on control segregation status for the second excessive force incident.

4.      Lawsuit #4 involves claims that unnamed prison staff took plaintiff's glasses and failed to provide plaintiff with adequate cell conditions while plaintiff was in temporary lockup.

5.      Lawsuit #5 involves claims that

 a. defendants Thomas Edwards and Lt. Tony and an unnamed housing sergeant of the segregation unit failed to provide adequate medical treatment for chest pains (petitioner also mentions a "defendant Captain Keller" but he is not named as a defendant in the caption); and

 b. an unnamed housing sergeant of the segregation unit used excessive force against plaintiff when applying a restraint belt to allow plaintiff to see a nurse about his chest pains.

6.      Lawsuit #6 involves claims that

 a. defendants Dr. Murphy and Wendy C. failed to treat plaintiff for his hearing loss, itching and rashes while he was in segregation; and

 b. after plaintiff was transferred to the Waupun Correctional Institution, defendants Sumnich and Belinda Schrubbe failed to treat plaintiff for his hearing loss, itching and rashes.

Because Rule 20 prohibits these six groups of claims from proceeding in a single lawsuit, I told plaintiff that he would have to pick one of the lawsuits to pursue in this case and, if he wished, he could select other lawsuits to pursue in separate cases, subject to separate filing fees and potential strikes (plaintiff is a prisoner so he may receive a "strike" in any case in which he asserts a claim that if frivolous or fails to state a claim upon which relief may be granted.  28 U.S.C. § 1915(g).)

## RESPONSE TO RULE 20 ORDER

Plaintiff has responded to the June 11 order.  He states that he wishes to pursue Lawsuit #2 in this case.  He also wants to pursue Lawsuits ##1 and 6.  As an initial matter, however, plaintiff moves for reconsideration of this court's determination that Lawsuit #1 must proceed separately from Lawsuit #2.  Plaintiff contends that the two groups of claims can be joined under Rule 20.  Lawsuit #1 involves plaintiff's claim that defendant Schelfhout "harassed" plaintiff about his medical conditions, which allegedly came about because Schelfhout had "heard about" plaintiff's "legal knowledge" and wanted to put him in his place.  After plaintiff responded by citing department policies, defendant Spranger came to plaintiff's cell and asked him about "quoting DOC policies" to Schelfhout, which eventually led to the alleged excessive force by Spranger and others and the remaining

4

incidents wrapped up in Lawsuit #2.

Plaintiff's argument is that the two lawsuits should be one because Schelfhout "started the incident."  However, Rule 20 allows, at most, that the same "series of transactions or occurrences" be joined.  An incident that simply "leads" to another is not enough.  In this case, the relationship between the two claims is tenuous.  There are no allegations suggesting that Schelfhout was involved in any way in the excessive force; the only tie between Schelfhout's "harassment" and the later incidents is that Spranger went to follow up plaintiff's response to that harassment.  This sort of connection is not the same "series of transactions" under Rule 20, so Lawsuits ##1 and 2 cannot be joined.

Plaintiff also asks to join one claim from Lawsuit #3 with Lawsuit #2.  That claim involves defendant Doman's alleged failure to provide due process during a hearing on the excessive force incident involving Spranger that appears in Lawsuit #2.  According to plaintiff, Doman's alleged due process violation is sufficiently related to the underlying excessive force incident because Doman allegedly "conspired with defendant Sprangers by making threats to plaintiff during his disciplinary hearing."  The complaint does not support plaintiff's conclusory statement that the two "conspired."  The statement plaintiff mentions is Doman's telling plaintiff that he was "lucky that [Doman] was not there at the time of this incident, otherwise [plaintiff] would have had more than some bruising."  Nothing in the complaint supports joining the claims as part of a "conspiracy."

5

Thus, plaintiff's motion for reconsideration will be denied.  Plaintiff may pursue Lawsuit #2 in this case and Lawsuits ##1 and 6 in separate lawsuits.  The claim in Lawsuit #1 will proceed in Case No. 10-cv-424-slc and the claims in Lawsuit #6 will proceed in case No. 10-cv-425-slc.  Because these cases arise out of a case in which plaintiff has requested leave to proceed in forma pauperis, I construe plaintiff's request to pursue these additional lawsuits as including requests for leave to proceed in forma pauperis with the same trust fund account statement plaintiff submitted in the original case.  Thus, for each of these cases, plaintiff's initial partial payment is $1.07.  For each case, plaintiff must make the initial partial payment before the case is screened.  Also, he must pay the remainder of the fee in monthly installments even if his request for leave to proceed is denied.

Rather than proceed in separate cases on the claims in Lawsuits #3, 4 and 5, plaintiff has voluntarily dismissed those claims.  These claims include all of plaintiff's claims against defendants Lt. Doman, Judy P. Smith, Thomas Edwards and Lt. Tony.  In addition, plaintiff has asked to voluntarily dismiss all of his claims against defendants Steven Caperson, Jennifer Delauex, Captain Keller, Dr. Sumnicht, Belinda Schrubbe and James Greer.  Most of these defendants were not mentioned in the body of the complaint.  However, defendants Sumnicht and Schrubbe were identified as having failed to treat plaintiff after he was transferred to the Waupun Correctional Institution and claims against them made up half of Lawsuit #6.  The defendants listed in this paragraph will be dismissed from the case and

6

plaintiff's claims against them will be dismissed without prejudice to plaintiff's later refiling them in a separate lawsuit.

To summarize, plaintiff's response to the June 11 order leaves the following claims at issue, in the following cases:

- In this case, plaintiff is pursuing all the claims listed above as part of Lawsuit #2.

- In Case No. 10-cv-424-slc, plaintiff is pursuing his claim that defendant K. Schelfhout "harassed" plaintiff about his medical conditions.

- In Case No. 10-cv-425-slc, plaintiff is pursuing his claim that defendants Dr. Murphy and Wendy C. failed to treat plaintiff for his hearing loss, itching and rashes while he was in segregation.

As mentioned above, the new cases must wait to be screened, but the present case is ready for screening. Before turning to that matter, however, I address one question plaintiff had. Plaintiff asks whether he should file new complaints in each case separating out the remaining claims and allegations for each one. At this point, such a complaint is unnecessary. The 11-page complaint is not so voluminous or tangled that the defendants in each case could not distinguish between claims and allegations that apply to them and ones that do not. That said, it is possible that, upon reviewing the claims of any of the three lawsuits, I may determine that the defendants in a particular case do not have sufficient notice of the claims for some other reasons. If so, plaintiff may be required to file an amended complaint at that time, with instructions on what is missing.

7

There is one caveat.  Plaintiff states that he intended to name "Doug Demotts" as a defendant in the caption of his complaint (and he already includes allegations about Demotts in the complaint).  Although usually plaintiff is required to submit a proposed amended complaint highlighting any changes (including adding new defendants to the caption), it is unnecessary to delay matters.  I have added Demotts to the caption as a defendant.

### SCREENING CLAIMS FROM "LAWSUIT #2"

Because plaintiff has paid the initial partial payment in this case, these claims are ready for screening.  Under the 1996 Prison Litigation Reform Act, the court must screen claims filed by prisoners such as plaintiff and deny leave to proceed on any claims that are legally frivolous, malicious, fail to state a claim upon which relief may be granted or ask for money damages from a defendant who by law cannot be sued for money damages.  28 U.S.C. § 1915(e).  Plaintiff is also a pro se litigant, which means his complaint will be construed liberally as it is reviewed for these potential defects.  Haines v. Kerner, 404 U.S. 519, 521 (1972).

Plaintiff may proceed on his claims that:

a.  defendants Randy J. Spranger, J. Smith, J. Jaber, Correctional Officer Meitzen and J. Hibbard used excessive force against plaintiff when placing him in

8

temporary lockup;

b.  defendant Spranger violated plaintiff's equal protection rights by treating him more severely during the excessive force incident because of his race and sexual orientation;

c.  defendant Spranger used the force he did against plaintiff in retaliation for plaintiff's speaking to an officer about the prison's rules;

d.  defendants Doug Demotts and Correctional Officer Ehnant performed an illegal strip search on plaintiff and defendant Kuster allowed the search to be performed; and

e.  defendant RN Wendy C. failed to provide plaintiff with adequate medical care for his injured wrist and leg after the excessive force incident.

Plaintiff's remaining claims are dismissed with prejudice for failure to state a claim upon which relief  may be granted.  These include his claims that defendant Spranger deprived plaintiff of his property without due process of the law when he took plaintiff's documents related to prison policy; and that defendant Tim Pierce never responded to plaintiff's complaints about the alleged excessive force.

From plaintiff's complaint, I draw the following facts.

9

A.  <u>Allegations of Fact</u>

On October 2, 2008, defendant Captain Spranger met plaintiff Lonnie L. Jackson at plaintiff's prison cell in the Oshkosh Correctional Institution.  Earlier in the day, plaintiff had told another prison staff member, K. Schelfhout, that she was violating department policy by harassing him.  Spranger asked plaintiff whether he could see plaintiff's copy of the policy he had cited.  After plaintiff handed him the binder containing the policy, Spranger told him that he would be taking all of plaintiff's legal materials and all documents bearing the name of Department of Corrections and its policies unless plaintiff showed Spranger proof that he had obtained the policies through an open records request.

Plaintiff told Spranger that he had paid for the policies "through legal channels" and had a right to have the policies.  Spranger became very upset and angry and told plaintiff "since you want to be an asshole about it, I'll just lock you up and have my staff go into your cell and get all the shit that way.  Put your hands behind your back, I'm placing you in TLU for disobeying my orders."  Spranger handcuffed plaintiff's arms behind his back and began to pull plaintiff along the hallway to the outside back door of the housing unit.  At some point, defendant Officer J. Smith began helping Spranger.

After the two got plaintiff outside the segregation unit, Spranger began to push and pull on plaintiff and told him to look at a pillar, not at Spranger.  Spranger threatened to slam plaintiff to the ground if he did not look at the pillar.  Spranger began to yell at plaintiff

10

and then kicked plaintiff's feet out from under him in a sweeping motion, causing plaintiff to fall face first to the ground. Spranger then smashed plaintiff's head and face to the ground and began to yell "stop resisting." Smith then began to apply pressure to plaintiff's right arm and hands. At some point, defendants J. Jaber, Meitzen and J. Hibbard joined the group. Jaber took hold of plaintiff's right leg and began to apply "strong pressure" to it, scraping the leg on the ground and causing pain and bleeding. Meitzen took hold of plaintiff's head and began to smash it into the ground and told plaintiff to "shut the fuck up and comply." She also began pressing very hard on plaintiff's right ear. Hibbard twisted plaintiff's left arm within the handcuffs. Defendant Smith also twisted plaintiff's left arm.

Spranger kneeled on the right side of plaintiff's head and applied pressure while the other staff applied pressure to the rest of plaintiff's body. At some point, Spranger told plaintiff "I don't like niggers trying to tell my officers about the rules, and being a smart-ass, that this is the consequence of being a jailhouse lawyer and a fag." (Plaintiff is black and homosexual.) Smith placed both knees on the center of plaintiff's back. Plaintiff told him he could not breathe, but Smith did not get off his back. While Meitzen applied pressure to plaintiff's head, others placed leg restraints on plaintiff. After that, the group lifted plaintiff off the ground and quickly dragged him backwards to the segregation unit. They were moving so quickly that defendant Lt. H. Kuster told them three times to slow down and finally "gave them a direct order to stop."

11

Once plaintiff was in the segregation unit, he was strip-searched. Defendant Doug Demotts cut off all of plaintiff's clothes and then defendant Ehnant started grabbing plaintiff's genitals and physically spread plaintiff's buttocks with his hands. Plaintiff objected, but defendants continued to perform the search, "all the while laughing" and joking with each other. When plaintiff tried to tell them that what they were doing was considered "sexual assault," they "all" laughed at him and defendant Kuster told him to "file a[n] inmate complaint, or sue us if you don't like it." Plaintiff was then placed in "control seg. status." Plaintiff did not receive written notice of the reasons for his placement in that status.

While in segregation, plaintiff told staff that he needed to see the nurse because he had received a cut on his left leg and his right wrist had begun to swell and was in pain. Defendant Wendy C. responded to plaintiff's request for care by simply looking through the window of the cell and telling defendant Doman that plaintiff was fine. Plaintiff was seen by medical staff later that day, but not right after the incident.

On October 13, 2008, plaintiff filed an inmate complaint about the use of force and the resulting injuries to his wrist, legs and right ear. However, the complaint was "mysteriously lost." In January 2009 and September and October 2009, plaintiff filed requests for information about the excessive force grievance. Defendant Tim Pierce never responded to the first complaint or any of the requests for information. At some point, plaintiff "was told to file another" complaint. On October 7, 2009, he did file another one,

but it was rejected because it came well after the 14-day time limit.

B.  Opinion

Plaintiff asserts seven claims in this case, all related to the incident in which he was restrained and taken to the segregation unit.  In particular, plaintiff contends that certain defendants (1) used excessive force while restraining him; (2) discriminated against him because of his race and sexual orientation; (3) retaliated against him for speaking about staff behavior not conforming to prison policy; (4) deprived him of property without due process; (5) performed an illegal strip search; (6) failed to provide adequate medical care; and (7) failed to respond to complaints about excessive force;

1.  Use of force

The first three claims relate to defendants' use of force to restrain plaintiff.  First is plaintiff's claim that defendants Spranger, Smith, Jaber, Meitzen, Hibbard and Kuster used excessive force when restraining him.  Excessive force claims are governed by the Eighth Amendment, and the question is "whether [the] force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  Whitley v. Albers, 475 U.S. 312, 320 (1986). The factors relevant to making this determination include:

13

   ▸ the need for the application of force;

   ▸ the relationship between the need and the amount of force that was used;

   ▸ the extent of injury inflicted;

   ▸ the extent of the threat to the safety of staff and inmates, as reasonably perceived
      by the responsible officials on the basis of the facts known to them; and

   ▸ any efforts made to temper the severity of a forceful response.

Id. at 321.  In Hudson v. McMillan, 503 U.S. 1, 9-10 (1992), the Court refined this

standard, explaining that the extent of injury inflicted was one factor to be considered, but

the absence of a significant injury did not bar a claim for excessive force so long as the

officers used more than a minimal amount of force.

     In this case, plaintiff alleges that each defendant except Kuster participated in

applying force to him after he was handcuffed, including smashing his head into the ground,

twisting his arms, applying pressure to his ear and kneeling on his back.  These actions allow

an inference that these defendants used force "maliciously and sadistically" and not for the

sake of "maintaining or restoring discipline."  It appears that defendants may have started

using force only after plaintiff refused to look at a pillar (instead of at any of them), and

plaintiff may have resisted.  Nonetheless, at this early stage, all inferences must be drawn in

favor of plaintiff, and the facts suggest that the force used may have been excessive.

     Defendant Kuster's involvement is different.  Plaintiff alleges only that he ordered the

other defendants to slow down and then to stop when they were dragging plaintiff too quickly.  Presumably, plaintiff has sued defendant Kuster not for what he did, but for what he didn't do.  A prison official may be liable under § 1983 for failing to intervene to stop the constitutional violation committed by another prison official.  Miller, 220 F.3d at 495. Although § 1983 requires personal responsibility for a constitutional violation, that requirement is satisfied whenever an official "acts or *fails* to act with a deliberate or reckless disregard of the plaintiff's constitutional rights."  Id. (quoting Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir. 1982)) (emphasis in original).  When an official has a "realistic opportunity to step forward and prevent" a constitutional violation, he may be held liable for failure to do so.  Miller, 220 F.3d at 495.

The allegations do not support an inference that Kuster had such a "realistic opportunity" to intervene.  Plaintiff does not suggest Kuster was in a position to stop the violence when it happened and mentions Kuster only in the context of explaining what Kuster did to try to stop the others from hurting plaintiff further after the assault.  Thus, although plaintiff may proceed on his excessive force claim against Spranger, Smith, Jaber, Meitzen and Hibbard, he may not proceed on this claim against Kuster.

The next two claims relate to defendant Spranger's behavior during the incident. Plaintiff contends that Spranger used more force than he would have because of plaintiff's race, sexual orientation or because plaintiff was engaged in protected speech.  Under the

15

equal protection clause of the Fourteenth Amendment, government officials must have at least a rational basis for different treatment, <u>City of Cleburne v. Cleburne Living Center</u>, 473 U.S. 432, 440 (1985), and in the case of different treatment because of race, even more is required.  <u>Johnson v. California</u>, 543 U.S. 499 (2005) (heightened scrutiny applies).  In addition, government officials may not take adverse action against a plaintiff simply because the plaintiff was engaged in protected activity.  <u>Bridges v. Gilbert</u>, 557 F.3d 541, 555-56 (7th Cir. 2009); <u>Hoskins v. Lenear</u>, 395 F.3d 372, 375 (7th Cir. 2005).

In this case, plaintiff points to "smoking gun" evidence that Spranger used the force he did because plaintiff is black and homosexual and because plaintiff spoke about staff violations of prison policy.  Spranger allegedly admitted his improper motives, stating that he "do[es]n't like niggers trying to tell [his] officers about the rules, and being a smart ass, that this is the consequence of being a jailhouse lawyer and a fag."  Although this allegation may seem unlikely, at this stage all well-pleaded facts must be accepted as true.  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1950 (2009).  This statement supports a finding that Spranger treated plaintiff differently (and adversely) because of his race, his sexual orientation and his speech about staff violations.

To the extent race and sexual orientation were the basis for discrimination, this violates the equal protection clause.  In the case of race, there is no suggested compelling state interest for treating blacks more harshly than other races, and in the case of sexual

16

orientation, there is no conceivable rational basis for treating homosexuals more harshly than heterosexuals.  Thus, plaintiff may proceed on his equal protection claims against Spranger.  To the extent that Spranger used the force because plaintiff had been speaking about staff violations of prison policy, his doing so gives rise to a claim for retaliation.  A prisoner's speaking about prison policy is a protected activity and plaintiff alleges that he was treated more harshly in part because of this speech.  Thus, plaintiff may also proceed on his claim that Spranger retaliated against him in violation of his First Amendment rights.

2.  Deprivation of property

Plaintiff contends that defendant Spranger also violated his due process rights by taking away his documents related to the department policies.  The Fourteenth Amendment prohibits states from depriving "any person of life, liberty or property without due process of law."  U.S. Const. Amend. XIV.  Procedural due process claims are analyzed in two steps: first, the court must determine whether the plaintiff was deprived of a constitutionally protected life, liberty or property interest; and second, consider what process is due in the context of the deprivation that occurred.  Ledford v. Sullivan, 105 F.3d 354, 356 (7th Cir. 1997).  In this case, plaintiff's allegation that Spranger took his documents establishes that plaintiff was deprived of a constitutionally protected property interest.  Caldwell v. Miller, 790 F.2d at 608 (inmate had property interest in hardbound books taken from his cell

during prison "lockdown"); Nance v. Vieregge, 147 F.3d 589, 590 (7th Cir. 1998) (inmate had property interest in possessions he attempted to take with him while being transferred to another prison).

However, plaintiff fails on the second step.  His allegations suggest that the destruction or loss of his property was a random and unauthorized act rather than one carried out pursuant to a policy of the institution or the Department of Corrections.  In the former situation, plaintiff is not entitled to procedure before his property is taken or destroyed, so long as a meaningful remedy exists post-deprivation.  Hudson v. Palmer, 468 U.S. 517 (1984) (no due process claim for random and unauthorized deprivation of property, even if taking is intentional, so long as state provides inmate suitable post deprivation remedy).  The state of Wisconsin provides post deprivation procedures for challenging the alleged wrongful taking of property.  Wis. Stat. ch. 893 contains provisions concerning tort actions to recover damages for wrongfully taken or detained personal property and for the recovery of the property.

Because post deprivation procedures were available to plaintiff in state court, he cannot contend that the state deprived him of due process by taking his documents.  Plaintiff's due process claim against Spranger must be dismissed for failure to state a claim upon which relief may be granted.

3.  Strip search

As the Court of Appeals for the Seventh Circuit has recognized, although prison officials are entitled to perform strip searches in a manner that furthers some "legitimate penological purpose," they may not perform them "in a manner designed to demean and humiliate" the prisoner.  Doing so could make them liable under the Eighth Amendment for "wanton infliction of psychological pain."  Calhoun v. DeTella, 319 F.3d 936, 940 (7th Cir. 2003).

Plaintiff alleges that defendants Demotts and Enhant did not give him an opportunity to cooperate with a visual inspection instead of a manual one, and at any rate, performed the search while "laugh[ing] and jok[ing] with each other" and "laugh[ing] at" plaintiff.  As for plaintiff's first concern, in some circumstances failure to allow a prisoner to comply with a visual inspection before conducting a manual inspection could constitute an unreasonable strip search if there was no legitimate penological reason for proceeding directly to the more intrusive manual inspection.  Vasquez v. Raemisch, 480 F. Supp. 2d 1120, 1131-32 (W.D. Wis. 2007).  In other circumstances, it may not be reasonable to allow a prisoner to first comply, such as when a prisoner has been restrained for legitimate penological reasons and could not assist staff in performing a visual search.  In this case, plaintiff had been restrained, but it is not clear whether there was any good reason for the restraint.  It may turn out that Spranger had good reason for handcuffing plaintiff in the first place; if so, then a subsequent

19

strip search for placement in segregation is not improper. However, there is still some room to doubt whether plaintiff should have been handcuffed in the first place, and the benefit of that doubt must go to plaintiff at this stage. Therefore, plaintiff may proceed on his theory that defendants Demotts and Enhant performed an illegal search by failing to allow him a chance to assist with a visual inspection.

The other theory is that these defendants were "laughing at" him while performing the search. Plaintiff may proceed on this theory as well. In <u>Calhoun</u>, 319 F.3d at 940, the court of appeals found that the guards' ribald comments and sexually explicit gestures during the search supported a conclusion that the guards conducted the strip search "in a manner designed to demean and humiliate" the plaintiff, which was sufficient to state a claim under the Eighth Amendment. Plaintiff does not identify any comments that could be considered "ribald" or identify any "sexually explicit" gestures, but the facts support an inference that defendants were no less demeaning. Plaintiff's allegation that they were "laughing at" him during the search and joking with each other allows an inference that they were making sexually inappropriate or humiliating comments while searching plaintiff.

As for defendant Kuster, his role is similar to that in the excessive force incident: he was simply there at some point. The difference is, during the strip search, the allegations suggest that Kuster laughed along with the others and instead of stopping the search when plaintiff complained, he simply told plaintiff to sue or file an inmate complaint. The

20

allegations allow an inference that Kuster had a realistic opportunity to put his foot down when plaintiff complained about the alleged sexual assault but instead did nothing. Therefore, plaintiff may proceed on his claim that Kuster failed to intervene while the others performed an illegal strip search.

4.  Medical care

Just as the Eighth Amendment prohibits disregarding a risk of serious assault, it also prohibits disregarding a prisoner's serious medical need.  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  A medical need may be serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering when treatment is withheld, Gutierrez v. Peters, 111 F.3d 1364, 1371-73 (7th Cir. 1997), "significantly affects an individual's daily activities," Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998), causes pain, Cooper v. Casey, 97 F.3d 914, 916-17 (7th Cir. 1996), or otherwise subjects the prisoner to a substantial risk of serious harm, Farmer v. Brennan, 511 U.S. 825 (1994).  "Deliberate indifference" means that the officials were aware that the prisoner needed medical treatment, but disregarded the risk by failing to take reasonable measures.  Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997).

Thus, under this standard, plaintiff's claim has three elements:

(1) Did plaintiff need medical treatment?

21

(2) Did defendants know that plaintiff needed treatment?

(3) Despite their awareness of the need, did defendants fail to take reasonable measures to provide the necessary treatment?

In this case, plaintiff alleges that he had a cut on his leg and a swollen wrist and defendant Wendy C. did nothing more than look through the window and declare that plaintiff was "fine" when she came to check on him after the alleged excessive force incident. Plaintiff alleges that he was later treated, but it is not clear how much time passed, whether Wendy C. was involved in that treatment, or how severe his injuries were. Drawing all inferences in plaintiff's favor, I conclude that the facts suggest that Wendy C. may have known plaintiff's injuries were sufficiently serious to require immediate treatment but simply refused to do anything about them. Plaintiff may proceed on his deliberate indifference claim against Wendy C.

### 5. Failure to respond to complaints

Finally, plaintiff contends that defendant Tim Pierce failed to respond to plaintiff's complaints about the alleged excessive force. Plaintiff is not complaining that Pierce could have done anything to stop the excessive force, only that he did not do anything about it when plaintiff complained, after the incident occurred. To the extent plaintiff is upset that Pierce did not provide him relief for the injury he suffered, he has no claim. As the Court of Appeals for the Seventh Circuit has explained, "a guard who rejects an administrative

22

complaint about a completed act of misconduct does not" violate the Constitution.  <u>George v. Smith</u>, 507 F.3d 605, 610 (7th Cir. 2007).

It may be that plaintiff believes Pierce may have interfered with plaintiff's ability to pursue his claims here.  The theory would be that, by failing to respond, Pierce blocked plaintiff from fully exhausting his administrative remedies.  There are two problems with this theory.  First, if that is plaintiff's claim, it is not ripe because he has not lost this case for failure to exhaust.  More important, however, is the point that, to the extent Pierce or anyone else made administrative remedies unavailable, plaintiff's complaint could not be dismissed.  Plaintiff is required to exhaust only all *available* administrative remedies.  I will dismiss plaintiff's claim against Pierce for failure to state a claim upon which relief may be granted.

ORDER

IT IS ORDERED that

1.  Plaintiff Lonnie L. Jackson's motion for reconsideration of the order requiring his case to be severed, dkt. #8, is DENIED.

2.  The court accepts plaintiff's decision to continue to prosecute in the context of this case the claims identified in this order as Lawsuit #2.

3.  The court accepts petitioner's decision to proceed in two new cases with the claims

23

identified in this court's order as Lawsuits ##1 and 6.  Those lawsuits are hereby SEVERED

in accordance with Fed. R. Civ. P. 20 and assigned the following Case Nos.:

     a.  In Case No. 10-cv-424-slc, plaintiff is pursuing his claim that defendant K.

Schelfhout "harassed" plaintiff about his medical conditions (Lawsuit #1).

     b.  In Case No. 10-cv-425-slc, plaintiff is pursuing his claim that defendants

Dr. Murphy and Wendy C. failed to treat plaintiff for his hearing loss, itching and

rashes while he was in segregation (Lawsuit #6, less certain voluntarily dismissed

claims).

    4.  For each new case, plaintiff is assessed $1.07 as an initial partial payment of the

$350 fee for filing that case. He is to submit a check or money order made payable to the

clerk of court in the amount of $1.07 for each case on or before August 21, 2010. If, by

August 21, 2010, plaintiff fails to make the initial partial payment or show cause for his

failure to do so, he will be held to have withdrawn that action voluntarily. In that event, the

clerk of court is directed to close the file for that case without prejudice to plaintiff's filing

it at a later date.

    5.  Plaintiff's claims identified in this court's order as Lawsuits ##3, 4 and 5 are

DISMISSED without prejudice.

    6.  In this case, 10-cv-212-slc, plaintiff Lonnie L. Jackson's request for leave to

proceed is GRANTED on his claims that

a.   defendants Randy J. Spranger, J. Smith, J. Jaber, Correctional Officer Meitzen and J. Hibbard used excessive force against plaintiff when placing him in temporary lockup;

b.   defendant Spranger violated plaintiff's equal protection rights by treating him more severely during the excessive force incident because of his race and sexual orientation;

c.   defendant Spranger used the force he did against plaintiff in retaliation for plaintiff's speaking to an officer about the prison's rules;

d.   defendants Doug Demotts and Correctional Officer Ehnant performed an illegal strip search on plaintiff and defendant Kuster allowed the search to be performed; and

e.   defendant RN Wendy C. failed to provide plaintiff with adequate medical care for his injured wrist and leg after the excessive force incident.

7.  In this case, 10-cv-212-slc, plaintiff's request for leave to proceed is DENIED with respect to the following claims, which are DISMISSED with prejudice for failure to state a claim upon which relief  may be granted:

a. defendant H. Kuster used excessive force against plaintiff when placing him in temporary lockup;

b.  defendant Spranger deprived plaintiff of his property without due process

25

of the law when he took plaintiff's documents related to prison policy; and

c.  defendant Tim Pierce never responded to plaintiff's complaints about the alleged excessive force.

8.  In this case, with respect to defendants K. Schelfhout, Dr. Murphy, Wendy C., Lt. Doman, Judy P. Smith, Thomas Edwards, Lt. Tony, Steven Caperson, Jennifer Delauex, Captain Keller, Dr. Sumnicht, Belinda Schrubbe, James Greer and Tim Pierce, plaintiff's complaint is DISMISSED.

9.  For the remainder of this lawsuit, plaintiff must send defendants a copy of every paper or document that he files with the court.  Once plaintiff has learned what lawyer will be representing defendants, he should serve the lawyer directly rather than defendants.  The court will disregard any documents submitted by plaintiff unless plaintiff shows on the court's copy that he has sent a copy to defendants or to defendants' attorney.

10.  Plaintiff should keep a copy of all documents for his own files.  If plaintiff does not have access to a photocopy machine, he may send out identical handwritten or typed copies of his documents.

11.  Pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's complaint and this order are being sent today to the Attorney General for service on the state defendants.  Under the agreement, the Department of Justice will have 40 days from the date of the Notice of Electronic Filing of

26

this order to answer or otherwise plead to plaintiff's complaint for the defendants on whose behalf it accepts service.

12.  Because I have dismissed a portion of plaintiff's complaint for one of the reasons listed in 28 U.S.C. § 1915(g), a strike will be recorded against plaintiff.

13.  Plaintiff is obligated to pay the unpaid balance of his filing fee in monthly payments as described in 28 U.S.C. § 1915(b)(2).  This court will notify the warden at the Waupun Correctional Institution of that institution's obligation to deduct payments until the filing fee has been paid in full.

Entered this 30th day of July, 2010.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge

27